UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CURTIS MECK and NANCY RAY,<br><br>    Plaintiffs,<br><br>v.<br><br>CENTER FOR HEALTH CARE<br>SERVICES, BEXAR COUNTY<br>SHERIFF'S OFFICE, and<br>BEXAR COUNTY, TEXAS,<br><br>    Defendants. | ‖<br>‖<br>‖<br>‖<br>‖<br>‖   CIVIL NO.  SA-05-CA-838-PM<br>‖<br>‖<br>‖<br>‖<br>‖<br>‖<br>‖ |

## MEMORANDUM DECISION and ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636 (c)(1) and Appendix C, Rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following Memorandum Decision and Order is entered.

## I.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367, and 1441.

## II.  PROCEDURAL HISTORY

On or about August 5, 2005, plaintiffs Curtis Meck ("Mr. Meck") and Nancy Ray ("Ms. Ray") initiated this case in the 37th Judicial District Court of Bexar County, Texas in Cause No.

---

[1] Docket nos. 3, 4, 10, and 16.

2005-CI-12685.[2]  Plaintiffs allege, in sum, that employees of the Center and Bexar County subjected them to unlawful detention and excessive force in violation of § 1983 and "negligently used, misused and/or failed to use tangible personal property as well as real property" to cause plaintiffs injuries and damages in violation of the Texas Tort Claims Act, Texas Civil Practice and Remedies Code §§ 101.001, et seq. ("TTCA").[3]  Plaintiffs seek damages for physical and mental pain, lost wages, suffering and anguish, medical expenses, attorney's fees, and interest.[4]

On or about August 30, 2005, defendants Bexar County, Texas and Bexar County Sheriff's Office (collectively ("Bexar County") filed their original answer and defenses which, in part, denies the Sheriff's Office is a entity subject to suit.[5]  On or about September 2, 2005, defendant Center for Health Care Services (the "Center") filed its original answer.[6]  On September 6, 2005, the Center and Bexar County removed the case to the Federal District Court on the basis of federal question jurisdiction because plaintiffs alleged violations of their rights under 42 U.S.C. § 1983.[7]  On June 9, 2006, Bexar County and the Center filed separate motions for summary judgment.[8]  Plaintiffs filed a response on July 12, 2006,[9] the Center filed a reply on

---

[2]  Docket no. 1 at 1 and plaintiffs' original petition.

[3]  Plaintiffs' original petition at 2-4.

[4]  Id. at 4.

[5]  Docket no. 1 at 2 and Bexar County's original answer and defenses.

[6]  Id. and the Center's original answer.

[7]  Docket no. 1.

[8]  Docket nos. 24 and 25.

[9]  Docket no. 30.

July 18, 2006,[10] and Bexar County filed a reply on July 26, 2006.[11]

### III. ALLEGATIONS and STATEMENT OF FACTS

**A.    Allegations in Plaintiffs' Original Complaint**

Plaintiffs' original petition alleges Mr. Meck "sustained injuries resulting from an unwarranted assault committed by employees of the Center," who repeatedly punched Mr. Meck in the shoulder and arm when he "tried to leave a holding room within the Center's building."[12] The original petition alleges that after the assault, "Mr. Meck was handcuffed tightly to a chair for 45 minutes, cutting off the circulation in his wrists and arms and resulting in visible bruising."[13]   According to the original petition, Ms. Ray was "injured when she attempted to assist Curtis Meck" as "Center employees threw her against a door jamb and slammed her against a wall when she tried to enter the holding cell in response to Mr. Meck's cries for help."[14] The original petition alleges that at the time of the assault, plaintiffs had been waiting the Center for several hours for "urgent, crisis-level care for Plaintiff Meck's severe depression."[15]   During that time, Mr. Meck allegedly was not seen by "any type of medical personnel."[16]   Allegedly, neither plaintiff indicated to Center employees that Mr. Meck "was a danger to himself or

_____

[10]   Docket no. 31.

[11]   Docket no. 33.

[12]   Docket no. 1, plaintiffs' original petition at 2.

[13]   Id. at 2-3.

[14]   Id. at 3.

[15]   Id.

[16]   Id.

others," and he "made no aggressive moves toward any Center employee."[17]

Based on these allegations, plaintiffs assert employees of the Center and Bexar County "negligently used, misused, and or failed to use tangible personal property as well as real property controlled by the Center . . . in its care and treatment of Curtis Meck and Nancy Ray," proximately causing injuries and damages to plaintiffs.[18]  In addition, plaintiffs assert that

> [a]s a direct and proximate result of defendants' negligence, Curtis Meck and Nancy Ray have suffered physical injuries, which injuries have had and are having a serious effect on Curtis Meck's and Nancy Ray's health and well-being, as well as having had their constitutional and statutory rights to leave the premises and to seek lawful services without being physically attacked violated by Defendants and Defendants' employees.[19]

**B.    Undisputed Facts**

The following events appear to be uncontested and are set forth to provide context for the issues before the Court.  Although these basic events are not in dispute, significant surrounding details are contested, such as whether Mr. Meck gave Center personnel the impression he was suicidal and whether he was handcuffed too tightly.  To the extent any contested facts are relevant to plaintiffs' § 1983 claims that the policies or procedures of the Center and Bexar County were the cause of their injuries or to the claims under the TTCA for injuries resulting from negligent use of personal and real property, the contested facts and inferences from them are construed in favor of nonmovant plaintiffs and are set forth as appropriate in the analysis portion of this Order.

---

[17]  Id.

[18]  Id.

[19]  Id.

4

Plaintiff Curtis Meck has a longstanding history of depression, substance abuse, and drug abuse.[20] Mr. Meck has also been diagnosed with panic disorder and anxiety.[21] In 1990, Mr. Meck was institutionalized for approximately seventy-two hours in the Natividad Psychiatric Unit in Salinas, California for depression.[22] Periodically, Mr. Meck would experience episodes of anger when he would be argumentative, fight, scream, and throw objects.[23] On or about August 7, 2003, plaintiff Nancy Ray took Mr. Meck to the Center's Josephine Street Crisis Center for depression.[24] Mr. Meck went voluntarily for treatment.[25] Plaintiffs completed the pre-registration form, indicating Mr. Meck felt depressed, suicidal, apathetic, loss of interest, and anger.[26]

Mr. Meck was initially interviewed by Rosendo Garza, a Licensed Professional Counselor.[27] Mr. Meck related information about his history of depression and mentioned his mother had suffered from depression and had committed suicide.[28] Mr. Meck said he was unable to make decisions, felt it was the end of the world, and thought the world would be better

---

[20] Docket no. 25 at ¶ 1; docket no. 30 at ¶¶ 1and 2.

[21] Docket no. 25 at ¶ 4; docket no. 30 at ¶ 1.

[22] Docket no. 25 at ¶ 3; docket no. 30 at ¶ 3.

[23] Docket no. 25 at ¶ 6; docket no. 30 at ¶ 4.

[24] Docket no. 25 at ¶ 9; docket no. 30 at ¶ 7.

[25] Id.

[26] Docket no. 25 at ¶ 11; docket no. 30 at ¶ 9.

[27] Docket no. 25 at ¶ 12; docket no. 30 at ¶ 10.

[28] Id.

off without him.[29]  Garza indicated on the "Contact/Interview Direct Service Form" that Mr.

Meck was not in crisis.[30]  Mr. Meck returned to the waiting room where Ms. Ray had remained.[31]

Mr. Meck was subsequently interviewed by Cordell Allen, a nurse.[32]  During the interview, Mr.

Meck said he was having problems making decisions and he did not know what he might do if he

did not receive medications from the Center.[33]  Mr. Allen discussed Mr. Meck's case with Mary

Glenney, the charge nurse, who ordered Mr. Meck placed in a secured holding area for

observation.[34]  Mr. Meck was told he was going to a secured area where he could not bring his

personal objects.[35]  Mr. Meck cooperated and left his belongings with Ms. Ray.[36]

After a while, Mr. Meck decided he wanted to leave the secured area but was told he had

to remain there.[37]  Mr. Meck refused, began to argue, and attempted to leave by pushing his

shoulder into a locked door.[38]  Members of the Deputy Mobile Outreach Team, deputies from the

Bexar County Sheriff's Department who were assigned to the Center, arrived and told Mr. Meck

---

[29]  Id.

[30]  Docket no. 30 at ¶ 11 and exhibit C-2.

[31]  Docket no. 25 at ¶ 14; docket no. 30 at ¶ 12.

[32]  Docket no. 25 at ¶ 16; docket no. 30 at ¶ 14.

[33]  Id.

[34]  Docket no. 25 at ¶ 17; docket no. 30 at ¶ 16.

[35]  Docket no. 25 at ¶¶ 18 and 19; docket no. 30 at ¶¶ 16 and 17.

[36]  Id.

[37]  Docket no. 25 at ¶¶ 19, 21, and 22; docket no. 30 at ¶¶ 20, 21, 22, and 23.

[38]  Docket no. 25 at ¶ 22; docket no. 30 at ¶¶ 22 and 24.

he could not leave.[39]  Mr. Meck again tried to leave the area.[40]  The deputies restrained Mr. Meck

with handcuffs.[41]  Ms. Ray attempted to intervene and was eventually removed from the area in

handcuffs.[42]  Mr. Meck remained handcuffed until he was seen by Dr. Steven Chathey, a

psychiatrist who prescribed medications.[43]  Mr. Meck was then released from the Center.[44]

## IV.  ISSUES

1.      Whether the Center or Bexar County are entitled to summary judgment on
        plaintiffs' § 1983 claims.

2.      Whether the Center or Bexar County are entitled to summary
        judgment on plaintiffs' claims under the TTCA.

## V.  SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in

Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.[45]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

---

[39]  Docket no. 25 at ¶ 22; docket no. 30 at ¶¶ 25 and 34.

[40]  Docket no. 25 at ¶ 23; docket no. 30 at ¶ 25.

[41]  Docket no. 25 at ¶ 23; docket no. 30 at ¶ 26.

[42]  Docket no. 25 at ¶¶ 25, 27, and 28; docket no. 30 at ¶ 30.

[43]  Docket no. 25 at ¶ 30; docket no. 30 at ¶¶ 36 and 37.

[44]  Docket no. 25 at ¶ 21; docket no. 30 at ¶ 39.

[45]  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552
(1986).

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[46]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[47]  A

dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could

return a verdict for the nonmoving party.[48]  Therefore, summary judgment is proper if, under

governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of

fact could resolve a factual issue in favor of either party, summary judgment should not be

granted.[49]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

demonstrate the absence of a genuine issue of material fact.[50]  The burden then shifts to the party

opposing the motion to present affirmative evidence in order to defeat a properly supported

motion for summary judgment.[51]  All evidence and inferences drawn from that evidence must be

viewed in the light favorable to the party resisting the motion for summary judgment.[52]  Thus,

summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if

---

[46] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[47] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[48] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[49] Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11.

[50] Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

[51] Anderson, 477 U.S. at 257, 106 S.Ct. at 2514.

[52] Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[53]

The movant may satisfy the burden to show the "absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[54]  If non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[55]

## VI.   ARGUMENTS AND CONCLUSIONS OF LAW

A.   Section 1983 Claims

        1.   The Center's Motion for Summary Judgment

                a.   summary of arguments

The Center has moved for summary judgment on plaintiffs' § 1983 claims, arguing, in sum, that it cannot be liable for any constitutional violations because, based on the facts, Mr. Meck's detention was in accordance with the Texas Mental Health Code as codified in § 573.001 of the Texas Health and Safety Code.[56]  The Center asserts Mr. Meck alleges only "the use of excessive force by the officers as his grounds for suit"[57] under § 1983 and argues the Center

---

[53]   See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[54]   Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

[55]   Stahl, 283 F.3d at 263.

[56]   Docket no. 25 at 9-13

[57]   Id. at 13.

cannot be held vicariously liable for the officers' actions.[58]  In addition, the Center argues Ms.

Ray "has failed to establish that she suffered a constitutional injury as a result of [the Center's]

actions," she is not alleging " any deprivation of her rights or privileges," and her claim "is for

the treatment against Plaintiff Meck."[59]  To support its summary judgment arguments, the Center

has proffered excerpts from the deposition testimony of Mr. Meck and Ms. Ray and affidavits

with attached exhibits from Rosendo Garza, Cordell Allen, and Mary Glenney.[60]

In response, plaintiffs assert they are complaining of "unlawful detention and injuries

resulting from that detention, without probable cause for that detention, and without adequate

care to protect Plaintiffs' right to be free from unreasonable search and seizure."[61]  Plaintiffs note

the Center's argument that based on Mr. Meck's candid comments, the staff "had no reasonable

alternative but to conclude that Plaintiff Meck must see a psychiatrist before he could be

released"[62] and argue the Center failed to follow state law and "incorrectly interpreted [Mr.

Meck's] actions."[63]  In particular, plaintiffs argue: Mr. Meck's statements of suicide "were

uttered in the context of the reasons why he was seeking help" and were not overt acts sufficient

to justify Mr. Meck's detention; Mr. Meck was not informed he was being lawfully detained;

after waiting for hours and "being locked in a room with an unconscious injured person," Mr.

---

[58]  Id. at 13-14.

[59]  Id. at 15.

[60]  Docket no. 25, exhibits A-E.

[61]  Docket no. 30 at 9.

[62]  Id. at 11 (citing docket no. 25 at ¶ 40).

[63]  Id.

Meck attempted to leave; and the only overt action taken by Mr. Meck was to "slam[] his shoulder into a locked door."[64]   Plaintiffs also argue Ms. Glenney's stated reason for summoning the deputies to complete an emergency detention -- "so that Mr. Meck could be evaluated by a psychiatrist in our facility" -- creates a genuine issue of material fact given that plaintiffs came to the Center to have Mr. Meck evaluated by a psychiatrist and had no reason to believe an emergency detention was required for such an evaluation.[65]   Plaintiffs acknowledge the Center's vicarious liability argument but assert several of the Center's "customs and usages which constitute standard operating procedure served to deprive Plaintiff Meck of his civil rights," particularly the failure "to inform [Mr. Meck] of their actions throughout this entire ordeal,"[66] including the failure to answer his questions or to explain that he would be detained until he was evaluated by a psychiatrist.  Plaintiffs also assert the Center has no "mechanism or standard procedure for informing detainees of their detention"  or "to secure cooperation and understanding from detainees and concerned relatives."[67]   With respect to Ms. Ray's claims, plaintiffs argue she was "thrown up against a doorjamb, handcuffed, and forced to endure violent statements" from the deputies because, in part, the Center failed to explain the situation to plaintiffs.[68]   To support their summary judgment arguments, plaintiffs have proffered excerpts from their deposition testimony; affidavits with attached exhibits from Mr. Garza, Mr. Allen, Ms.

---

[64] Id.

[65] Id. at 10.

[66] Id. at 12.

[67] Id. at 12-13.

[68] Id. at 13.

11

Glenney, and Deputy Reymundo Chapa; and § 9.02 the Bexar County Sheriff's Office policies and procedures.[69]

In reply, the Center contends that by arguing the Center "has no standard for informing detainees or their relatives about emergency detention," plaintiffs have admitted "they are not complaining about any existing [Center] policies per se."[70]  In that light, the Center argues plaintiff is required but has failed to present evidence showing a Center custom or practice was the moving force behind the alleged constitutional violations.[71]  In particular, the Center argues plaintiffs have offered no summary judgment evidence to show similar incidents have occurred to other persons that might suggest at a policy, custom, or practice, or lack of such, to not inform consumers or relatives of the procedures employed when treatment is sought.[72]  Additionally, the Center argues, in sum, that based on Mr. Meck's statements and conduct, its employees were following statutory authority for emergency detentions rather than a Center policy.[73]   The Center argues, in sum, that Ms. Glenney's decision to start an emergency detention based on Mr. Meck's comments and conduct comports with Texas law requiring detention based on a "showing of substantial threat of future harm manifested by some overt act or threat in the recent past."[74]  The

---

[69]  Docket no. 30, exhibits A-G.

[70]  Docket no. 31 at 3.

[71]  Id. at 3-4.

[72]  Id. at 4-5.

[73]  Id. at 5.

[74]  Id. at 6.

Center asserts Mr. Meck has admitted his detention was reasonable and prudent.[75]  Bexar County

has also replied and essentially reiterates the arguments raised in its motion for summary

judgment and the arguments raised by the Center.[76]

### b.    section 1983 standards

Section 1983 does not create any substantive rights, but instead provides a remedy for

violations of federal statutory and constitutional rights.[77]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

In order to state a cause of action under § 1983, a plaintiff's claim for relief must allege facts

establishing that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of

the United States; and (2) defendant acted under color of state law.[78]  The Fifth Circuit has held

that, "section 1983 imposes liability for violations of rights secured by the Constitution, not

violations of duties of care arising out of tort law."[79]

---

[75]  Id.

[76]  Docket no. 33.

[77]  LaFleur v. Texas Dept. of Health, 126 F.3d 758, 759 (5th Cir. 1997); Jackson v. City of
Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117 S.Ct. 70 (1996).

[78]  Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997), cert. denied, 525 U.S. 822, 119
S.Ct. 65 (1998); Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir. 1990); Wong v. Stripling, 881 F.2d 200,
202 (5th Cir. 1989).

[79]  Lynch v. Cannatella, 810 F.2d 1363, 1375 (5th Cir. 1987).

Local governmental units, such as the Center,[80] may be subject to liability under § 1983 for violations of constitutional rights.[81]  But, such liability may not be imposed on the basis of respondeat superior.[82]  "Section 1983 liability attaches "only where the [local governmental unit] itself causes the constitutional violation at issue.'"[83]  Thus, local governmental units may be liable "only when an official policy or governmental custom . . . causes the deprivation or violation of the constitutional rights complained of by the plaintiff."[84]  For liability to exist, a local governmental employee must violate a person's constitutional rights because of the policy or custom.[85]

The Fifth Circuit has defined "policy" as:

1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [local governmental unit's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the local governmental unit] policy.  Actual or constructive knowledge of

---

[80]  Brooks v. Center for Healthcare Serv., 981 S.W.2d 279, 284 (Tex. App.–San Antonio 1998, no pet.).

[81]  Monell v. Department of Soc. Serv., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978); Burge v. Parish of St. Tammany, 187 F.3d 452, 470-71 (5th Cir. 1999) (citing Monell).

[82]  Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 308 (5th Cir. 2004).

[83]  Faire v. City of Arlington, 957 F.2d 1268, 1277 (5th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989)).

[84]  Id.

[85]  Id.

such custom must be attributable to the governing body of the [local governmental unit] or the official to whom that body delegated policy-making authority.[86]

The Fifth Circuit has also explained that the "official policy" requirement can satisfied at least three ways:

1.   "[W]hen the appropriate officer or entity promulgates a generally applicable statement or policy and the subsequent act complained of is simply an implementation of that policy;"

2.   Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right; and

3.   Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need."[87]

c.   **analysis**

A fair reading of the original petition suggests plaintiffs are alleging Mr. Meck was detained by Center personnel in a secured area for observation without cause and was barred by Center personnel from leaving the area before he was evaluated by a psychiatrist.  When Mr. Meck attempted to leave and refused to return to the secured area, Bexar County deputies and Center personnel forcibly detained Mr. Meck until he could be seen by a psychiatrist.  Plaintiffs allege that in the process of being forcibly detained, Mr. Meck suffered an "unwarranted assault." In addition, plaintiffs allege Ms. Ray was assaulted and unlawfully detained by deputies when she attempted to assist Mr. Meck.  Based on these allegations, the essence of plaintiffs' claims is

---

[86]   Johnson, 379 F.3d at 309 (quoting Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992)).

[87]   Burge, 187 F.3d at 471 (citations omitted).

that Center personnel unlawfully detained Mr. Meck without cause and subsequently used excessive force in forcibly detaining Mr. Meck.

To the extent plaintiffs' have alleged the deputies acted improperly in detaining either Mr. Meck or Ms. Ray, the record reflects the deputies are employees of the Bexar County Sheriff's Department.[88]  Plaintiffs cite no evidence suggesting the deputies were also employees of the Center at the time of the incident at issue or subject to Center policies on detentions or use of force.  Accordingly, based on the present record, the Center cannot be subjected to liability for any policies that may have affected the deputies actions.

Assuming Mr. Meck was unlawfully detained and subjected to an excessive use of force, plaintiffs do not argue the unconstitutional acts were caused by existing policies the Center has promulgated.  Rather, plaintiffs argue the unlawful acts occurred because the Center has failed to adopt a policy requiring that detainees and family members be informed about the decision to detain and because Center personnel have the standard practice of failing to inform detainees and family members about a detention.  Plaintiffs have proffered no evidence to support their conclusory arguments.  In particular, there is no evidence suggesting the Center lacks a policy for providing information about detentions or Center personnel regularly engage in the practice of not providing such information and the Center policymakers have actual or constructive knowledge of the practice.  Plaintiffs have not proffered the Center's policy on detentions to show there is no requirement to inform consumers and relatives about detentions, the deposition or affidavit testimony of Center employees suggesting there is no such requirement, or evidence

---

[88]  Docket no. 25 at 5, exhibit D (affidavit of Cordell Allen), and exhibit E (affidavit of Mary Glenney); docket no. 30 at 6 and exhibit F (affidavit of Bexar County Deputy Sheriff Reymundo Chapa).

showing Center personnel persistently fail to provide such information as part of standard operating practice, suggesting the absence of a policy or a pervasive custom of not providing information about decisions to detain.[89]  Although Mr. Meck's deposition testimony reflects he was told by Center nurses that a man lying face down on a cot in the secured area had to be physically stopped when he attempted to leave the area,[90] plaintiffs have produced no evidence suggesting the man was not provided information about his detention.  To the extent plaintiffs have alleged Center personnel used excessive force, plaintiffs have not argued, cited authority, or produced evidence regarding the Center's policies or practices on use of force.

Based on the above analysis, plaintiffs have failed to raise a genuine issue of material fact about whether the Center's policies, practices, or lack of policies caused Center personnel to unlawfully detain Mr. Meck and to use excessive force during the detention.  As plaintiffs have failed to raise a genuine issue of material fact regarding an element of their § 1983 claim against the Center, the Center is entitled to summary judgment.

### 2.     Bexar County's Motion for Summary Judgment

#### a.     summary of arguments

Bexar County has moved for summary judgment on plaintiffs' § 1983 claims, arguing it

---

[89]  Johnson, 379 F.3d at 309 ("Johnson did not plead that there had ever been any similar incidents (or allege any other facts suggesting that the allege policy was adopted or maintained with deliberate indifference to constitutional rights)"); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) ("proof of a custom or practice requires more than a showing of isolated acts"), cert. denied, 540 U.S. 1108, 124 S.Ct. 1074 (2004); Burge, 187 F.3d at 473 (explaining plaintiff did not meet burden to establish district attorney failed to institute policy or procedure regarding Brady material because "[t]he record is devoid of evidence, however, that prior to the Burge case the Sheriff's Office ever failed to deliver complete copies of the investigatory files to the District Attorney or to update them properly").

[90]  Docket no. 30, exhibit A (excerpts from Mr. Meck's deposition testimony) at 88, 92.

is "liable for excessive force claims under § 1983 only if the individual officer or officers who committed the violation [and who are not sued in this case] acted according to an unconstitutional county policy or custom" which plaintiffs have not identified.[91]  Specifically, Bexar County argues plaintiffs have no evidence of an official "policy directing its officers to use excessive force;"[92] "persistent, repeated, constant violations to establish an informal policy;" or actual or constructive knowledge of the illegal practice.[93]  Bexar County contends evidence of an isolated incident of excessive force is not sufficient to establish a practice.[94]  In support of its arguments, Bexar County has proffered an excerpt from Mr. Meck's deposition testimony, the affidavit of Deputy Chapa, and a copy of its "Use of Force" policy.[95]

In response, plaintiffs acknowledge Bexar County's use of force policy but argue that rather than complying with the policy, the deputies followed an accepted informal custom for handling mentally ill persons.[96]  Specifically, plaintiffs assert the deputies' "custom appears to be immediate hostile interaction with the mentally ill, rather than de-escalation through conversations;"[97] failing to identify themselves as law enforcement officers; failing to explain the detention; accepting improperly completed referral forms; and "blindly believ[ing] the [Center's

---

[91]  Docket no. 24 at 2.

[92]  Id. at 5.

[93]  Id. at 6.

[94]  Id.

[95]  Id., exhibits A-C.

[96]  Docket no. 30 at 14.

[97]  Id. at 16.

assertions."[98]

> **b.**   **analysis**

Plaintiffs are not challenging actual policies Bexar County has promulgated or asserting Bexar County failed to institute policies that would have protected their constitutional rights. Nor have plaintiffs argued how Bexar County's policies, practices, or lack or policies caused violations to Ms. Ray's constitutional rights.  Plaintiffs argue only that Mr. Meck's constitutional rights were violated because deputies engaged in pervasive illegal customs Bexar County knew of and accepted.  As with the claims against the Center, assuming the deputies acted unlawfully, plaintiffs have not produced evidence to support their arguments.  Plaintiffs cite evidence of one incident involving the deputies which is not sufficient to establish a custom or practice or Bexar County's deliberate indifference to constitutional rights.[99]  Plaintiffs cite no evidence suggesting deputies routinely: failed to identify themselves as law enforcement officers to the Center's consumers; reacted aggressively when summoned to deal with consumers; relied on improperly completed forms; and accepted without question the assertions of Center personnel regarding a consumer's need for detention.  Moreover, plaintiffs cite no authority showing the forms, as completed, failed to comply with state law or the deputies violated state law by relying on the representations of Center personnel regarding the need to detain Mr. Meck.

In sum, plaintiffs have failed to raise a genuine issue of material fact about whether  their constitutional rights were violated because of practices or customs accepted by Bexar County. Accordingly, Bexar County is entitled to summary judgment on plaintiffs' § 1983 claims.

---

[98]  Id.

[99]  Faire, 957 F.2d at 1278; see also note 86.

B.    **TTCA Claims**

1.    **The Center's Motion for Summary Judgment**

a.    **summary of arguments**

With respect to the claims under the TTCA, the Center argues it is entitled to sovereign immunity because plaintiffs cannot establish a "condition, misuse, or non-use of tangible personal property" or a "condition or use of real property."[100]   Additionally, the Center contends plaintiffs' claims are for excessive use of force, an intentional tort for which immunity has not been waived.[101]   The Center further contends it has retained sovereign immunity under the TTCA because its employees were responding to an emergency situation.[102]

In response, plaintiffs argue they were injured by personal and real property consisting of handcuffs, chair, door jamb, floor, and locked door.[103]   In reply, the Center reiterates its arguments that sovereign immunity bars plaintiffs' TTCA claims because the acts at issue were intentional and because there is no evidence showing the Center used or misused personal or real property to cause injuries.

b.    **analysis**

Absent legislative consent to sue the State, sovereign immunity, unless waived, bars

---

[100]   Id. at 17.

[101]   Id.

[102]   Id.

[103]   Id.

lawsuits against the State of Texas, its agencies, and its officials.[104]  Legislative consent for suit

or any sovereign immunity waiver must be "by clear and unambiguous language."[105]  Pursuant to

Texas law, the "Tort Claims Act provides a limited waiver of sovereign immunity, allowing suits

to be brought against government units only in certain, narrowly defined circumstances."[106]  A

court must determine the scope of the waiver from the terms of the TTCA and must consider

whether from the facts, the case comes within that scope.[107]  Unless exceptions apply, the TTCA

does waive immunity for personal injury "caused by a condition or use of tangible personal or

real property if the governmental unit would, were it a private person, be liable to the claimant

according to Texas law."[108]

　　　The Center is an agency of Texas for the purposes of the TTCA and is entitled to

sovereign immunity unless the TTCA's limited waiver of immunity is applicable.[109]

Accordingly, based on plaintiffs' allegations, the Center may be held liable for personal injury

caused by a condition or use of its personal or real property -- the handcuffs, door jamb, floor, or

---

[104] Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997), superceded by statute on other grounds, General Serv. Comm'n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591 (Tex. 2001) (breach of contract claims against State).

[105] Id. (citing University of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175, 177 (Tex. 1994) and Duhart v. State, 610 S.W.2d 740, 742 (1980)).

[106] Texas Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001).

[107] Id.

[108] Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005).  The Act may also waive immunity for injury caused by the use of a motor-driven vehicle or motor-driven equipment. Id. at 101.021(1).  Plaintiffs have not asserted a claim involving a motor-driven vehicle or motor-driven equipment.

[109] Tex. Health & Safety Code Ann. § 534.001(c)(1) (Vernon 2003 & Supp. 2006).

locked door.  Although plaintiffs properly contend the handcuffs used in this case are personal

property, they have cited no evidence to show the handcuffs belonged to the Center or were used

by Center personnel in restraining plaintiffs.  The chair, door jamb, floor, and locked door are the

personal or real property of the Center.  But, plaintiffs have not alleged, argued, or cited evidence

showing they were injured by the condition of the chair, door jamb, or floor or presented

evidence showing Center personnel used this property to cause them injuries.  Moreover,

plaintiffs cite no authority showing the Center can be liable for injuries the deputies may have

caused with Center property or, under the present facts, that the locked door is a condition or use

for which the Center might be subjected to liability.[110]  Because plaintiffs have failed to raise a

genuine issue of material fact regarding whether their injuries were caused by a condition or the

Center's use of its real or personal property, the Center is entitled to summary judgment on

plaintiffs TTCA claim.

### 2.    Bexar County's Motion for Summary Judgment

Bexar County also has moved for summary judgment on plaintiffs' TTCA claims on the

basis of sovereign immunity.[111]  Bexar County argues, in sum, that the Center owned the real

property at issue.[112]  As for the handcuffs, Bexar County argues plaintiffs have not alleged

---

[110]  Plaintiffs did cite <u>Bossley v. Dallas County Mental Health & Mental Retardation</u>, 934
S.W.2d 689, 695 (Tex. App.–Dallas 1995), but failed to explain what authority the case provides and
to note the case was reversed by the Texas Supreme Court in <u>Dallas County Mental Health & Mental
Retardation v. Bossley</u>, 968 S.W.2d 339 (Tex.), <u>cert. denied</u>, 525 U.S. 1017, 119 S.Ct. 541 (1998).

[111]  Docket no. 24 at 7-8.

[112]  <u>Id.</u> at 8.

anything was wrong with those used.[113]   Rather, Bexar County argues, plaintiffs have

inconsistently alleged Mr. Meck was injured when he was tightly handcuffed for forty-five

minutes and cited testimony showing the handcuffs were expanded after approximately five

minutes.[114]   In addition Bexar County argues plaintiffs have failed to state a TTCA claim for use

or misuse of the handcuffs because their " real claim is for the use of excessive force."[115]   Bexar

County further argues its sovereign immunity is not waived because the deputy would be entitled

to official immunity if he had been sued.[116]   Finally, Bexar County argues plaintiffs have not

alleged the use of personal property caused injuries to Ms. Ray.[117]

        In a brief two sentence paragraph, plaintiffs argue the deputies' handcuffs caused them

injuries.[118]   In particular, plaintiffs argue the use of handcuffs caused Mr. Meck to be severely

bruised and Ms. Ray to be restrained and hurt.[119]

        Bexar County is a state governmental entity and is entitled to sovereign immunity unless

a limited waiver of immunity is applicable.[120]   Under the TTCA, a governmental entity may be

---

[113]   Id.

[114]   Id. at 8-9.

[115]   Id. at 9.

[116]   Id. at 8-9.

[117]   Id. a 9.

[118]   Docket no. 30 at 17.

[119]   Id.

[120]   Smith v. Tarrant County, 946 S.W.2d 496, 501 (Tex. App.–Fort Worth 1997, writ denied).

liable for the negligence of its employees under the doctrine of respondeat superior.[121] Accordingly, the Court must determine whether plaintiffs have alleged their injuries were caused by the deputies' negligent use of handcuffs.

Plaintiffs have alleged: Mr. Meck "sustained injuries resulting form an unwarranted assault;" he "was repeatedly punched in the shoulder and the arm;" and "handcuffed tightly to a chair for 45 minutes, cutting off the circulation in his wrists and arms, resulting in visible bruising."[122]  Plaintiffs allege Ms. Ray was injured when she was thrown against a door jamb and slammed against a wall.[123]  In the statement of facts included in plaintiffs' summary judgment response, plaintiffs contend Mr. Meck was tackled, strong-armed, and grabbed by the throat.[124] One deputy had Mr. Meck's arm in a handcuff and "he tried to take this one and there was no way he could bend it over his legs, because his legs and knees were in the way."[125]  The deputy ignored Mr. Meck's pleas of pain, smashed his face into the ground, and punched him in the head several times.[126]  "Another officer held Plaintiff Meck's head, hitting it against the floor, while the big man continued to force Meck's arms together to fit into the handcuffs."[127]  Plaintiffs

---

[121] Holland v. City of Houston, 41 F.Supp.2d 678, 711 (S.D. Tex. 1999) (citing DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995)).

[122] Docket no. 1, plaintiffs' original petition at 2-3.

[123] Id. at 3.

[124] Docket no. 30 at 5.

[125] Id.

[126] Id.

[127] Id. at 6.

contend Mr. Meck was jerked up by his handcuffs and the deputy stomped on Mr. Meck's toe.[128]
Shortly after being placed in the secured area, the handcuffs were extended with a second pair but
the cuffs were tight.[129]  Mr. Meck was informed "the people who had violently restrained him
were with the Sheriff's Department."[130]  With respect to Ms. Ray, plaintiffs contend she "was
smashed into the doorway by a female officer," handcuffed, and removed from the area.[131]  Ms.
Ray was subsequently uncuffed and returned to the waiting room.[132]

Although handcuffs are tangible personal property, the essence of plaintiffs' claims is
assault or excessive use of force.[133]  Plaintiffs' pleadings, even when construed in their favor,
suggest the deputies' actions were deliberate and intentional, not merely negligent.[134]  Section
101.057 of the Texas Civil Practice and Remedies Code, excepts from the TTCA all claims
"arising out of assault, battery, false imprisonment, or any other intentional tort."[135]  The Fifth

---

[128] Id.

[129] Id.

[130] Id.

[131] Id.

[132] Id.

[133] See United States v. Faneca, 332 F.2d 872, 875 (5th Cir. 1964), cert. denied, 380 U.S. 971 (1965); see also Riggs v. City of Pearland, 177 F.R.D. 395, 405 (S.D. Tex. 1997) (use of mace not actionable); Dunn v. City of San Antonio, 796 S.W.2d 258, 261 (Tex. App.–San Antonio 1990, writ denied) (use of handcuffs not actionable); McCord v. Memorial Med. Ctr. Hosp., 750 S.W.2d 362, 363 (Tex. App.–Corpus Christi 1988, no writ) (security guard's use of nightstick not actionable).

[134] See Holland, 41 F.Supp.2d at 713.

[135] TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 2005); see also Nueces County v. Ferguson, 97 S.W.3d 205, 223 (Tex. App.–Corpus Christi 2002, no pet.); Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex. App.–San Antonio 1999, no writ).

Circuit has said, "This provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective."[136]  If the essence of the claim under the TTCA "arises from an intentional tort, allegations of negligence are insufficient to avoid" the exception to liability.[137]

In sum, assuming the events occurred as plaintiffs contend and plaintiffs could show they each sustained injuries, their allegations are for injuries resulting from assault or excessive use of force rather than from negligence.  Therefore, Bexar County's sovereign immunity has not been waived by the TTCA and summary judgment is proper.

## VII.  CONCLUSION

Based on the foregoing analysis, **IT IS ORDERED** that the motions for summary judgment of the Center for Health Care Services[138] and Bexar County and the Bexar County Sheriff's Office[139] are **GRANTED**, and plaintiffs' claims under § 1983 and the TTCA against the Center, Bexar County, and the Bexar County' Sheriff's Office are **DISMISSED**.  The Clerk shall enter judgment in favor of defendants and against plaintiffs, each side to bear its own costs.

**ORDERED, SIGNED and ENTERED** this 27th day of July, 2006.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[136] Gillum v. City of Kerrville, 3 F.3d 117, 123 (5th Cir. 1993), cert. denied, 510 U.S. 1072, 114 S.Ct. 879 (1994).

[137] Holland, 41 F.Supp.2d at 713.

[138] Docket no. 25.

[139] Docket no. 24.